IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| : | |
| v.   : | CRIMINAL ACTION NO. |
| : | 1:10-CR-132-RWS/AJB |
| COREY ELDER [#1],   : | |
| MARCUS EDWARDS [#2], and   : | |
| SHERARD JONES [#3],   : | |
| : | |
| Defendants.   : | |

**ORDER**

This case comes before the Court on the Report and Recommendation of Magistrate Judge Alan J. Baverman ("R&R") [106]. Having considered the R&R and the Objections [112, 117, and 118] thereto, the Court adopts the R&R as the opinion of the Court except as to the issue of the applicability of the Fair Sentencing Act of 2010 ("FSA"), as discussed below.

**Background**

The R&R summarizes the charges against the Defendants as follows:

On March 23, 2010, a grand jury returned a ten-count indictment charging various violations of federal law against four defendants: Elder, Edwards, Jones, and Antwan Parker. [Doc. 18]. The

indictment charged all of the defendants with conspiracy with the intent to distribute at least 50 grams of crack cocaine and 500 grams of cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(b)(1)(A)(iii), 841(b)(1)(B)(ii)(II)(IV), 846, and 851 (Count 1). Elder was also charged with: (1) being a prior felon convicted of a felony drug offense ("prior drug felon") who distributed and aided and abetted others in distributing at least 5 grams of crack cocaine on September 17, 2009, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and 851 (Count 2); (2) being a prior drug felon who distributed and aided and abetted Edwards and Parker in distributing at least 5 grams of crack cocaine on October 7, 2009, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii) (Count 3); (3) being a prior drug felon who distributed and aided and abetted others in distributing at least 5 grams of crack cocaine on October 20, 2009, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii) (Count 4); and (4) being a prior drug felon who distributed and aided and abetted Parker in distributing at least 5 grams of crack cocaine on November 4, 2009, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii) (Count 5). Edwards was charged in Counts 1 and 3 discussed above and in the following four counts: (1) distributing at least 5 grams of crack cocaine and aiding Jones (who was a prior drug felon) in doing so on January 13, 2010, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii) and 851 (Count 7); (2) aiding Jones and Parker in distributing at least 5 grams of crack cocaine on February 18, 2010, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii) and 851 (Count 8); (3) aiding Jones and Parker in distributing at least 500 grams of cocaine on February 22, 2010, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II)(IV) and 851 (Count 9); and (4) aiding and abetting Jones and Parker who possessed firearms in distributing cocaine on February 24, 2010, in violation of 18 U.S.C. §§ 2, 924(c) (Count 10). Finally, Jones, a prior drug felon, was charged in Counts 1, 7, 8, 9 and 10 outlined above as well as

> Count 6, which charged him with distributing at least 5 grams of crack on December 8, 2009, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and 851 (Count 6).

(Dkt. [106] at 3-4).  Defendants Elder, Edwards, and Jones entered pleas of not guilty.  (Dkt. [30, 37, and 40]).

## Discussion

In his Reply Brief to Government's Response to Defendant's Motion to Declare the Cocaine Base Provisions and Penalties Unconstitutional [97], Defendant Edwards requests that the Court declare the cocaine base provisions and penalties unconstitutional, or in the alternative, "that he be subjected only to the new cocaine-base penalties which are articulated n the Fair Sentencing Act of 2010 [(the "FSA")]."  (Dkt. [97] at 1).  The FSA increased the quantity of crack cocaine that triggers a sentence of 5 to 40 years from 5 grams to 28 grams and the quantity that triggers a sentence of 10 years to life from 50 grams to 280 grams.  Fair Sentencing Act, Pub. L. 111-220, 124 Stat. 2372 (codified at 21 U.S.C. § 841 (2010)).  In regards to the application of the FSA, Judge Baverman concluded:

> To the extent that the defendants seek a finding that the penalties in the Fair Sentencing Act of 2010 ("FSA") apply retroactively to them, such a request appears to be foreclosed by the Eleventh

> Circuit's decision in United States v. Gomes, 621 F.3d 1343, 1346 (11th Cir. 2010), which concluded that "because the FSA took effect in August 2010, after appellant committed his crimes, 1 U.S.C. § 109 bars the Act from affecting his punishment." Since the defendants committed their crimes prior to the FSA's August 2010 enactment, the Gomes decision appears to preclude retroactive application of the FSA. Although in United States v. Douglas, ---- F. Supp. 2d ----, 2010 WL 4260221, *3 n.28 (D. Me. Oct. 27, 2010), the court distinguished Gomes and other circuit court cases on the ground that the defendants in these cases had already been sentenced, the undersigned finds that the general language in Gomes, which emphasized the timing of the offense, not the timing of the sentencing, is controlling on this Court.

(Dkt. [106] at 20 n.4). For the reasons stated below, this Court disagrees and intends to apply the FSA to the sentencing of the present Defendants.

In reaching this conclusion, the Court is aware of the Eleventh Circuit's decision in Gomes, cited by Judge Baverman, as well as its decision in United States v. Bradley, No. 10-11639, 2011 WL 169228 (11th Cir. Jan 20, 2011) and United States v. Mickens, No. 10-10347, 2011 WL 49843 (11th Cir. Jan. 7, 2011). The Eleventh Circuit in all three decisions held that 1 U.S.C. § 109 (the "Savings Statute") bars the application of the FSA to the defendant in each case because each defendant's crimes were committed before the August 2010 effective date of the FSA. Bradley, 2011 WL 169228, at *5; Mickens, 2011 WL 49843, at *1; Gomes, 621 F.3d at 1346. However, the procedural posture

4

of this case is distinguishable from that of <u>Gomes</u>, <u>Mickens</u>, and <u>Bradley</u>.  In each of those cases the defendant was sentenced prior to the effective date of the FSA and the district court judge had applied the law as it existed at the time of the defendant's sentencing.  In contrast, in this case the Defendants have not been convicted and have not been sentenced.  Therefore, any sentence this Court assigns for a potential conviction will occur after the effective date of the FSA, and more importantly, as will be discussed in greater detail below, after the emergency amendment of the United States Sentencing Guidelines pursuant to the directive provided by Congress in the FSA.[1]  Additionally, while the

---

[1] As in the decisions from the Eleventh Circuit, cases in other circuits that have refused to apply the more lenient mandatory minimum sentences of the Fair Sentencing Act to criminal conduct that occurred before the date of the FSA's enactment all involve defendants who had already been sentenced before August 3, 2010.  <u>See</u> <u>United States v. Bell</u>, 624 F.3d 803, 814 (7th Cir. 2010); [<u>Gomes</u>, 641 F.3d at 1346]; <u>United States v. Carradine</u>, 621 F.3d 575, 579-81 (6th Cir. 2010).  Those cases are inapposite.  Whether the FSA can or should be applied to cases pending "in the pipeline" is a different question.  The issue presented here is not the "retroactive" application of a new statute.  The issue is whether it is patently unfair to sentence a defendant who has not been convicted at the time the FSA was enacted to penalties that Congress has abrogated finding them arbitrary, unfair and discriminatory.
<u>United States v. Holland</u>, No. 8:10CR48, 2011 WL 98313, at *9 n.4 (D. Neb. Jan. 10, 2011; <u>see</u> <u>also</u> <u>United States v. Cox</u>, No. 10-cr-85-wmc, 2011 WL 92071, at *1 (W.D. Wis. Jan. 11, 2011)  (noting that all circuits to address the question of the applicability of the FSA have concluded that the general Federal Savings Statute operates to bar the retroactive application of the FSA, but no circuit has examined its applicability to a

5

Eleventh Circuit relies upon the Savings Statute in Gomes, Mickens, and Bradley to preclude the application of the FSA to defendants whose crimes were committed prior to August 2010, these decisions do not explore whether Congress intended to have the reduced mandatory sentencing minimums established by the FSA applied to individuals who are sentenced following the effective date of the Act.[2]  If the intent of Congress is to have the new sentencing structure created by the FSA applied to defendants sentenced after the effective date of the FSA, then the Savings Statute should not be applied to negate the intent of Congress.  See Great N. Ry. Co. v. United States, 208 U.S. 452, 465, 28 S. Ct. 313, 52 L. Ed. 567 (1908) (noting that the predecessor to the Savings Statute "must be enforced unless, either by express declaration or necessary implication, arising from the terms of the law as a whole, it results that the legislative mind will be set at naught . . .").

---

defendant who has not yet been sentenced (citing Bell; Carradine; United States v. Brewer, 624 F.3d 900, 900 n.7 (8th Cir. 2010); United States v. Lewis, 625 F.3d 1224, 1228 (10th Cir. 2010); Gomes; United States v. Glover, 2010 WL 4250060, *2 (2d Cir. October 27, 2010))).

[2] Other circuits have similarly not considered the intent of Congress.  See e.g., Cox, 2011 WL 92071, at *2 (noting that Seventh Circuit in Bell did not consider whether Congress's intent was to apply the FSA's mandatory minimums to those defendants awaiting sentencing for crack cocaine offenses).

Several courts have found that not applying the new sentencing structure to a defendant sentenced after the FSA's enactment, would be contrary to the intent of Congress.  See United States v. Cox, No. 10-cr-85-wmc, 2011 WL 92071, at *2 (W.D. Wis. Jan. 11, 2011) ("this court is persuaded that the structure, language and context of the FSA is sufficiently strong to find Congress intended for the reduced mandatory minimum sentencing provisions to be applied to offenders yet to be sentenced"); United States v. Holland, No. 8:10CR48, 2011 WL 98313, at *11 (D. Neb. Jan. 10, 2011) ("Based upon the language and structure, legislative history, and motivating policies of the Fair Sentencing Act and the Sentencing Reform Act of 1984, the court finds Congress did not want federal judges to continue to impose harsher sentences after the enactment of the FSA merely because the criminal conduct occurred before the enactment."); United States v. English, ---- F. Supp. 2d ----, No. 3:10-CR-53, 2010 WL 5397288 (S.D. Iowa Dec. 30, 2010) (finding "direct evidence that Congress intended the [FSA] to apply to all sentences after the date of enactment"); United States v. Whitfield, No. 2:10CR13, 2010 WL 5387701, at *2 (N.D. Miss. Dec. 21, 2010) ("This court finds that applying the [FSA] is consistent with congressional intent and in harmony with the language,

7

or lack thereof, in the Act itself."); United States v. Ross, ---- F. Supp. 2d ----, No. 10-CR-10022, 2010 WL 5168794, at *2 (S.D. Fla. Dec. 17, 2010) (noting that not applying FSA to Defendant would arrive "at a sentence the Congress believes to be totally unfair"); United States v. Gillam, ----, F. Supp. 2d ----, No. 1:10-cr-181-2, 2010 WL 4906283, at *7 (W.D. Mich. Dec. 3, 2010) ("because Congress clearly meant to reduce the scope and impact of the disparity between crack and powder offenses, the government's arguments to limit the applicability of the new statute seem to me to be less than compelling"); United States v. Douglas, ---- F. Supp. 2d ----, No. 09-202-P-H, 2010 WL 4260221 (D. Me. Oct. 27, 2010) ("I conclude, based upon the context of the Act, its title, its preamble, the emergency authority afforded to the Commission, and the Sentencing Reform Act of 1984, that Congress did not want federal judges to continue to impose harsher mandatory sentences after enactment merely because the criminal conduct occurred before enactment.").[3] Other district

---

[3] The Court in Cox notes that the defendant in that case cites a growing list of district courts around the country finding that the new, reduced mandatory minimum for crack cocaine should be applicable to any defendant sentenced after the enactment date of the FSA. See, e.g., United States v. Johnson, 08-cr-270-Orl-31 KRS (M.D. FL Jan. 4, 2011) (Presnell, J.); United States v. Favors, 1:10-cr-384-LY-1, Doc. No. 34 (W.D. TX Nov. 23, 2010) (Yeakel, J.);

courts, however, have found no such intent on the part of Congress.  See United States v. Dickey, ---- F. Supp. 2d ----, No. 3:2009-34, 2011 WL 49585 (W.D. Pa. Jan. 4, 2011); United States v. Johnson, No. 09-373, 2011 WL 39090 (E.D. La. Jan 4, 2011); United States v. Patterson, No. 10 Cr. 94(JSR), 2010 WL 5480838 (S.D.N.Y. Dec. 30, 2010); United States v. Lightfoot, No. 3:10CR42-HEH, 2010 WL 5300890 (Dec. 22, 2010 E.D. Va.); United States v. Crews, ---- F. Supp. 2d ----, No. 06-418, 2010 WL 5178017 (W.D. Pa. Dec. 20, 2010); United States v. Ohaegbu, No. 6:92-cr-35-Orl-19, 2010 WL 3490261 (M.D. Fla. Aug. 31, 2010).  Considering the arguments on both sides of the question, the Court is persuaded that Congress intended the FSA to apply to individuals whose actions preceded the Act, but who have not yet been sentenced.

The Court finds Judge Hornby's decision in Douglas and Chief Judge Bataillon's decision in Holland to be particularly well reasoned and will quote

---

United States v. Johnson, 3:10-CR-138, Doc. No. 26 (E.D. Va Dec. 7, 2010) (Payne, J .); [Douglas, (D. Me.)]; United States v. Angelo, 1:10-cr10004-RWZ (D. Ma Oct. 29, 2010) (Zobel, J.); United States v. Shelby, 2:09-cr-0379-CJB Doc. No. 49 (E.D. La Nov. 10, 2010) (Barbee, J.); United States v. Roscoe, 1:10-cr-126-JTN (W.D.MI) (Neff, J.); [Whitfield, (N.D. Miss.)].
2011 WL 92071, at *2.  See also United States v. Dixson, No. 8:08-CR-360-T-33AEP, Doc. No. 33 (M.D. Fla. August 24, 2010) (applying FSA to sentencing of defendant whose crime occurred prior to the FSA's enactment).

9

liberally from the two opinions in explaining its conclusion. As noted by Judge Hornby, "[t]he Fair Sentencing Act of 2010 says nothing directly about the categories of offenders to whom it applies (those who have not yet offended; offenders not yet convicted; offenders convicted but not yet sentenced; offenders already sentenced)." Douglas, 2010 WL 4260221, at *1. This raises the question of "how to determine Congress's will on that subject in the absence of any explicit direction." Id. The primary argument against applying the FSA to those defendants awaiting sentencing is that the Act is silent on this matter, and in light of the Savings Statute, this silence is conclusive. The Savings Statute states:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, *unless the repealing Act shall so expressly provide*, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109 (emphasis added). However, the Supreme Court has held that the predecessor to the Savings Statute need not be enforced if, "either by express declaration or necessary implication arising from the terms of the law as a whole, it results that the legislative mind will be set at naught by giving [it]

10

effect." Great N. Ry. Co., 208 U.S. at 465. The Savings Statute is to be construed "in order to give effect to the will and intent of Congress." Hertz v. Woodman, 218 U.S. 205, 217, 30 S. Ct. 621, 54 L. Ed. 1001 (1910). The Court concludes that by "necessary implication arising from the terms of the law as a whole," not applying the FSA to defendants that have not yet been convicted and sentenced would negate the will of Congress. In addition to the text and context of the Act, cases interpreting the savings clause, the Sentencing Commissions emergency guidelines, and the Sentencing Reform Act of 1984 support such a finding of Congress's intent.

The Public Law that created the FSA is titled an act "[t]o restore fairness to Federal cocaine sentencing," and followed several years of debate over the harsh crack penalties in the Anti-Drug Abuse Act of 1986. Holland, 2011 WL 98313, at *4 (citations omitted). In the Act, Congress provided the Sentencing Commission with emergency authority "to make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law" as "soon as practicable, and in any event not later than 90 days after the date of

11

enactment of this Act." Fair Sentencing Act, Pub. L. 111-220, § 8, 124 Sta.

2373, 2374. As noted by Judge Bataillon:

> Pursuant to that authority, the Sentencing Commission issued temporary emergency amendments effective November 1, 2010. See Notice of a Temporary Emergency Amendment to Sentencing Guidelines and Commentary, 75 Fed.Reg. 66188-02, 66191, 2010 WL 4218801 (F.R .) (Oct. 27, 2010) (noting that to account for statutory changes, "the amendment conforms the guideline penalty structure for crack cocaine offenses to the approach followed for other drugs, i.e., the base offense levels for crack cocaine are set in the Drug Quantity so that the statutory minimum penalties correspond to levels 26 and 32," and other offense levels are established by extrapolating upward and downward). The Commission noted that "[c]onforming to this approach ensures that the relationship between the statutory penalties for crack cocaine offenses and the statutory penalties for offenses involving other drugs is consistently and proportionally reflected throughout the Drug Quantity Table." Id.

Holland, 2011 WL 98313, at *4. As Judge Hornby notes,

> the new Guidelines cannot be "conforming" and "achieve consistency" (Congress's express mandate) if they are based upon statutory minimums that cannot be effective to a host of sentences over the next five years until the statute of limitations runs on pre-August 3, 2010 conduct.
>
> What is more, for years the Sentencing Reform Act of 1984 has directed expressly that the governing Guidelines are those in effect on the day a defendant is sentenced. The Guideline commentary refers to this statutory provision as "Congress's directive to apply the sentencing guidelines in effect at the time of sentencing." Thus, during the past two decades of the Guidelines'

12

> existence, whenever the Commission has adopted Guideline amendments, those amendments have applied to all defendants sentenced thereafter, regardless of when the crime was committed. That is what will happen to the new Guidelines' alterations of the base offense levels for various quantities of crack: the new Guidelines will apply to all future sentencings after November 1, 2010, even if the criminal conduct occurred before the Fair Sentencing Act's effective date. Congress "expressly" required that outcome by ordering the emergency amendments within 90 days. Thus, many pre-August 3, 2010 offenders will benefit from the changed crack offense levels, at least if the mandatory minimums do not apply to them. Congress instructed the Commission to make such changes and make them immediately, under an existing statutory structure that makes them apply to those who have already offended but who have not yet been sentenced. It would be a strange definition of "conforming" and "consistency" to have these new amended Guidelines go into effect while the old and therefore inconsistent statutory minimums continue.

Douglas, 2010 WL 4260221, at *4-5. Not applying the FSA to Defendants would result in mandatory sentences that fail to conform with the applicable sentencing guideline ranges.

Additionally, even absent express language negating the application of the Savings Statute,

> exceptions may be implied "where essential to prevent 'absurd results' or consequences obviously at a variance with the policy of the enactment as a whole." United States v. Rutherford, 442 U.S. 544, 552 (1979). The Supreme Court imputes to Congress "an intention to avoid inflicting punishment at a time when it can no longer further any legislative purpose, and would be unnecessarily

13

vindictive." Hamm v. City of Rock Hill, 379 U.S. 306, 308 (1965); United States v. Chambers, 291 U.S. 217, 222-23 (1934); Massey v. United States, 291 U.S. 608 (1934); see also United States v. Mechem, 509 F.2d 1193, 1196 (10th Cir.1975) (finding that the stated purpose of a congressional enactment to avoid prosecution of juveniles as criminals and the enactment's recognition of a need for "immediate and comprehensive action," furnished the basis for the conclusion that "Congress did not intend the ordinary criminal process to continue, through the saving statute, to reach juveniles not yet tried."). Congress's intent to apply a statute to pending cases does not have to be expressed in explicit language of the statute itself, but may be revealed by studying the context of the statute as a whole. See Lindh v. Murphy, 521 U.S. 320, 326 (1997); see also Abbott v. United States, --- U.S. ----, 131 S.Ct. 18 (finding strong contextual support for its interpretation of a statutory provision and stressing that a contrary reading "would result in sentencing anomalies Congress surely did not intend").

Where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant. United States v. Bass, 404 U.S. 336, 348 (1971) (describing the "rule of lenity"). The "rule of lenity" principle of statutory construction applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose. Bifulco v. United States, 447 U.S. 381, 387 (1980). Statutory interpretative principles should "give the rule of lenity special force in the context of mandatory minimum provisions," because an interpretive error on the side of leniency still permits the sentencing judge to impose a sentence that will serve all other sentencing goals set forth by Congress in other statutory provisions. Dean v. United States, 129 S.Ct. 1849, 1860-61 (2009) (Breyer, J., concurring); see also Leocal v. Ashcroft, 543 U.S. 1, 11 n.8, (2004) (ambiguities in criminal statutes referenced in immigration laws should be construed in the noncitizen's favor).

Holland, 2011 WL 98313, at *7-8.

As the Court has noted, exceptions to a statute are appropriate to avoid "absurd results." Rutherford, 442 U.S. at 552. For the Court to continue to impose sentences that are contrary to the statute that Congress itself described as "An Act to restore fairness to Federal cocaine sentencing" would be an absurd result. Fair Sentencing Act of 2010, Pub. L. No. 111-220, Preamble, 124 Stat. 2372.

> Application of the savings clause under these circumstances would have the result of setting the legislative mind "at naught." Such action would frustrate the expressed congressional goals of remedying racially discriminatory impact, ensuring that more culpable offenders are punished more harshly, and achieving consistency with the Guidelines.

Holland, 2011 WL 98313, at *11.

Therefore, the Court finds that "it is clear in the text and structure of the Fair Sentencing Act, in conjunction with the other congressional enactments that establish the overall federal criminal sentencing scheme, that Congress intended the Act to apply to cases pending at the time of the enactment." Id. at *9. In light of the foregoing, an application of the Savings Statute to the FSA

15

would contradict the will of Congress, and such an outcome is to be avoided. Great N. Ry. Co., 208 U.S. at 465.

## Conclusion

For the aforementioned reasons, the Court adopts the R&R [16] as the opinion of the Court, except as to the applicability of the FSA to these Defendants.  Accordingly, Defendant Jones' Motion to Sever [46] is **DENIED**; Defendants Edwards and Elder's Motions to Dismiss Counts [66,77] are **DENIED**; Defendant Elder's Oral Motion to Suppress [Dkt. Entry dated 5/7/2010] is **DENIED**; and Defendants' Objections [112, 117] to the denial of Defendants' Motions for Disclosure of Confidential Informant [46, 68-69, 73] are **OVERRULED**.  Further, if a Defendant is convicted of a charge in the indictment, the Court will apply the sentencing structure set forth in the FSA.

**SO ORDERED** this   26th   day of January, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

16